In the Matter of the TOWN OF POUGHKEEPSIE, Appellant, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents.

Second Department, December 28, 1981

APPEARANCES OF COUNSEL

*David D. Hagstrom (Anthony DeRosa* of counsel), for appellant.

*Robert Abrams, Attorney-General (Kathleen Liston Morrison, James A. Sevinsky* and *Shirley Adelson Siegel* of counsel), for Robert F. Flacke, respondent.

OPINION OF THE COURT

COHALAN, J.

This appeal is from a judgment of the Supreme Court, Dutchess County, that dismissed the petition in a CPLR article 78 proceeding (105 Misc 2d 149). The proceeding was brought on the petition of the Town of Poughkeepsie (Town) to annul the determination of the Commissioner of the State Department of Environmental Conservation (DEC) which authorized the operation of a solid waste management facility (landfill) by Dutchess Sanitation Service, Inc. (Dutchess), in a residential portion of the Town, subject to numerous conditions.

The issues to be resolved on this appeal are:

(1) The jurisdiction of the State Environmental Quality Review Act; and,

(2) To what extent and when it may be exercised with respect to the factual circumstances of this case.

The current Environmental Conservation Law (ECL) was enacted by section 2 of chapter 664 of the Laws of 1972, effective September 1, 1972. In large part it is comprised of the former Environmental Conservation Law and also

includes certain portions of the Agriculture and Markets Law, the Conservation Law, the Executive Law, the Public Health Law, and certain unconsolidated laws.

By section 1 of chapter 612 of the Laws of 1975, effective September 1, 1976, a new article 8 came into being entitled (State) Environmental Quality Review (Act) whose acronym is SEQRA. As stated in section 8-0101 of the article: "It is the purpose of this act to declare a state policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and enhance human and community resources; and to enrich the understanding of the ecological systems, natural, human and community resources important to the people of the state."

In ECL 8-0103 (subd 6) (as amd by L 1977, ch 252, § 1), entitled legislative findings and declaration, we find that: "It is the intent of the legislature that to the fullest extent possible the policies, statutes, regulations, and ordinances of the state and its political subdivisions should be interpreted and administered in accordance with the policies set forth in this article. *However, the provisions of this article do not change the jurisdiction between or among state agencies and public corporations.*" (Emphasis added.)

Pursuant to the provisions of the ECL, Dutchess filed an application with DEC to carry out specific operations on its real property within the Town; among other items a sanitary landfill. Dutchess owns approximately 64 acres of land in the Town. On about 10 of the acres it operates a baling facility for waste paper products. This operation is a nonconforming use of 20 years' duration, by virtue of which Dutchess is permitted to conduct a "business consisting of the collection of garbage, commercial and residential", on the site.

The chronology indicates that the Town adopted an overall zoning ordinance on February 20, 1974; and that Dutchess, according to the Town, has illegally operated a landfill at the site since 1977.

A public hearing on Dutchess' application was held before an Administrative Law Judge (ALJ). Due notice of

the hearing was advertised and the hearing itself was conducted. It terminated on March 4, 1980.

As a part of its proof, Dutchess prepared a draft environmental impact statement (DEIS) which was accepted as sufficient for hearing purposes. In his decision accepting the hearing report of the ALJ (which included 11 conditions satisfactory to the parties) the respondent commissioner noted in part that: "The Hearing Report in this case reveals that environmental impacts have been adequately addressed and that in exercising this Department's jurisdiction over the instant permit applications the findings under 6 NYCRR § 617.9 (c) can be made in the affirmative. *In this regard, the Hearing Report, together with the draft EIS constitutes the final EIS.* Accordingly, consistent with 6 NYCRR § 617.9 (a) this Decision will be effective 15 days from the date of service of this Decision whereupon the Department staff is directed to issue the relevant permits approved herein consistent with the recommendations of the Hearing Report." (Emphasis added.)

At the time he issued his decision, the commissioner was aware that the property was in a residential district and that Dutchess was involved in litigation with the Town concerning the valid use of the property.

The main thrust of the Town's appeal is that the DEC is barred as a matter of law from acting until Dutchess has proved its compliance with all applicable laws, including the zoning ordinance. As a corollary, states the Town, the commissioner as head of the "lead agency",[1] may not, in violation of ECL 8-0109 (subd 8) issue any permits until the Town suit is determined. That subdivision reads: "When an agency decides to carry out or approve an action which has been the subject of an environmental impact statement, it shall make an explicit finding that the requirements of this section have been met and that consistent with social, economic and other *essential considerations,* to the maximum extent practicable, adverse environmental effects revealed in the environmental impact state-

---

1. A "lead agency" is "an agency principally responsible for carrying out, funding or approving an action, and therefore responsible for determining whether an environmental impact statement is required in connection with an action, and for the preparation and filing of the statement if one is required." (6 NYCRR 617.2 [q].)

ment process will be minimized or avoided." (Emphasis added.)

The Town now contends, on appeal, as it did at the public hearing, that the zoning ordinance and comprehensive plan were "essential considerations"; that any action in conflict with them leads to the conclusion of adverse environmental effects; and that an approving agency (in this case DEC) as the lead agency must make an explicit finding as to all adverse environmental effects (see ECL 8-0109, subd 8). In addition, it contends that Dutchess failed to sustain its burden of proof.

In support of its position, the Town cites section 269 of the Town Law, which in pertinent part, states: "Wherever the regulations made under authority of this article * * * impose other higher standards than are required in any other statute or local ordinance or regulation, the provisions of the regulations made under authority of this article shall govern." DEC found that the landfill at issue met all the environmental requirements; and so, subject to the Town zoning ordinances and with the knowledge, as noted above, that the Town is seeking a permanent injunction against Dutchess, it granted the relief sought. It may have been premature from the standpoint of the municipality but it was, nonetheless, lawful. The hearing officer (ALJ) and the commissioner observed all the statutory enactments with meticulous exactness. The ALJ included in his report a statement that "Granting of the approvals and permits for this overall Project [landfill] does not relieve the Applicant [Dutchess] of its responsibility to obtain any other required approvals from any other unit of government having jurisdiction" (bracketed matter added); and in confirming the report, the commissioner wrote: "It is fundamentally clear that the jurisdiction of this Department under the ECL does not include authority to adjudicate legal issues concerning compliance with local government zoning. It is equally clear that SEQR [sic] did not intend to confer, directly or indirectly, any such authority."

Thus, the invocation of SEQRA was not intended to and did not pre-empt nor in any way interfere with the zoning ordinance or with the pending litigation. (See *Monroe-Livingston Sanitary Landfill v Town of Caledonia*, 51

NY2d 679, 684; ECL art 27.) Nor did it conflict with section 269 of the Town Law because it is not attempting to impose higher standards in derogation of that statute.

From a practical standpoint, the precise timing of the draft EIS (and the final EIS) is meaningless in this instance. There is little or no likelihood that the subject property is going to experience any physical changes. "The hills rock-ribbed and ancient as the sun, the vales stretching in pensive quietness between"[2] will remain undisturbed, at least until the determination of the pending litigation. There is no indication that DEC is interfering with the physical *status quo;* and indeed the statements of the ALJ and the commissioner directly negate any such intention.

On the question of jurisdiction, if the commissioner attempted to arrogate unauthorized power to himself by deciding the zoning question, it would be akin to a workers' compensation referee reaching a determination not only on the issue before him, but also ruling on the merits of any third-party action the compensation claimant might assert.

In certain circumstances, as at bar, the ECL necessarily comes into play; and as noted in *H.O.M.E.S. v New York State Urban Dev. Corp.* (69 AD2d 222, 232): "'there is a relatively low threshold for impact statements'" and SEQRA requires an EIS for any action "'which may have a significant effect on the environment'". (See, also, *Matter of Kravetz v Plenge,* 102 Misc 2d 622.) Research has uncovered no case that dictates when the EIS is to be prepared, just so long as it is done before the project (herein the landfill) commences.

Thus we conclude that DEC and Special Term acted properly and accordingly affirm the judgment, without costs or disbursements.

Finally, we strongly urge Dutchess and the Town to employ all means at their disposal to expedite the trial of the pending litigation.

HOPKINS, J. P., RABIN and O'CONNOR, JJ., concur.

---

2. Thanatopsis — by William Cullen Bryant.

Judgment of the Supreme Court, Dutchess County, dated September 10, 1980, affirmed, without costs or disbursements.